(98 South. 630)

## HOWELL v. HOWELL. (4 Div. 19.)

(Supreme Court of Alabama. Feb. 8, 1923.
Rehearings Denied June 28, 1923,
and Dec. 13, 1923.)

1. **Appeal and error ⬉706(4)—Sufficiency of evidence reviewed, though no evidence shown by bill of exceptions in support of motion for new trial.**

In a will contest, general charges refused to plaintiff, made the ground of motion for new trial, will be reviewed as to sufficiency of evidence, though no evidence was shown by the bill of exceptions to have been offered in support of the motion, the testimony offered on the trial being in the breast of the court, and needing no reintroduction, Acts 1915, p. 722, as to including evidence and taken in support of motion for new trial in the bill of exceptions, not changing the former rule as to testimony taken on original trial.

2. **Appeal and error ⬉525(3)—Essentials to review of refusal of charges stated.**

Where refused charges were in writing, and indorsed: "Rejected. J. M. R., Judge of Probate"—there was a substantial compliance with Acts 1915, p. 815. to make same grounds for new trial 'and authorize review of court's action in refusing them.

3. **Wills ⬉396—Question of undue influence not raised by "no evidence" charge.**

In a will contest, where the question of lack of evidence of undue influence was sought to be raised by the "no evidence" charge, and was not sufficiently raised by motion for new trial, the appellate court need not consider sufficiency of evidence as to whether testator was unduly influenced.

4. **Trial ⬉194(9)—Refusal of "no evidence" charges not error.**

Requested charges that there was no evidence that testator did not have sufficient mind or memory to execute a will, or that it was executed as the result of undue influence were "no evidence" charges, and refusal thereof was not error.

5. **Trial ⬉194(9)—Refusal of charges on testamentary incapacity held proper.**

In a will contest, where there was evidence of testamentary incapacity, there was no error in refusing charges that if the evidence was believed to find for proponent.

6. **Wills ⬉53(4)—Evidence of testator's mother's insanity held competent.**

In a will contest, where there was proof tending to show testator's mental incapacity, evidence that his mother became insane was relevant and admissible.

7. **Wills ⬉53(6)—Evidence of peculiarities of testator held competent.**

Evidence of witnesses who had known testator for many years that they went with him to hospital the day after his will was executed, observed peculiarity about his eyes and muscles twitching, was competent with other evidence on which to base their opinion that testator was not of sound mind.

8. **Wills ⬉165(5)—Letters and other evidence tending to infer undue influence held competent.**

Letters to his wife and memoranda of testator of a will before execution of the one offered for probate, the writings being related to the will and tending to show testator's intent as to final disposition of property, were competent, as tending to show that the will propounded for probate was in conflict with testator's fixed or previously expressed purpose.

9. **Evidence ⬉16—"Mar. 20, 22," judicially known to mean March 20, 1922.**

Memorandum of date, "Mar. 20, 22," is judicially known to mean March 20, 1922.

10. **Wills ⬉54(3)—Memorandum after will signed competent as to condition of testator's mind after execution.**

In a will contest, memorandum of March 20, 1922, after the will was signed, held competent evidence as to condition of testator's mind immediately after execution of his will.

### On Rehearing.

11. **Appeal and error ⬉831—Appellate court may of its own motion call up case for rehearing.**

The appellate court has the power, ex proprio motu, to put a case on rehearing that further consideration may be given to decisions claimed by the appellant to be applicable to the rulings on evidence.

12. **Trial ⬉90—Court not put in error for allowing answer to go to jury where no motion to exclude.**

The court cannot be put in error for allowing a nonresponsive answer to go to the jury when there was no motion to exclude.

13. **Wills ⬉396—Permitting nonresponsive answer to go to jury not reviewed in absence of motion to exclude.**

In a will contest, where, in answer to a question as to witness' knowledge of whether testator's wife had assisted him in accumulating his property, he stated that he was of the opinion that she did, and another witness stated that he saw her work most every day, the court's action in permitting such opinion and nonresponsive answers to go to the jury will not be reviewed in absence of motion to exclude.

14. **Wills ⬉164(4)—Wife's evidence as to relations with testator at time of will held competent.**

In a will contest, in which the wife of testator was the contestant, her evidence as to what she had done in the way of help about the house and in otherwise helping testator was competent, her testimony being declaratory of the state of feeling between her and testator within a reasonable time before the will was made, and not having the effect of asserting or declaring any equitable title in household property or source of title to husband's property.

Appeal from Probate Court, Covington County; J. M. Robinson, Judge.

Petition by J. A. Howell to probate an instrument as the last will of J. E. J. Howell,

deceased, with contest by Lizzie Howell. From a decree for contestant, proponent appeals. Affirmed.

The following charges were refused to proponent:

"(1) I charge you, gentlemen of the jury, that, if you believe the evidence in · this case, you must find for the proponent.

"(2) I charge you, gentlemen of the jury, that, if you believe the evidence in this case, you cannot find for the contestant."

"(11) I charge you, gentlemen of the jury, that there is no evidence in this case that J. E. J. Howell did not have sufficient mind and memory to execute the will.

"(12) I charge you, gentlemen of the jury, that there is no evidence in this case that the will was executed by J. E. J. Howell as the result of undue influence exerted over him by any other person."

The memorandum offered in evidence by contestant is as follows:

"My last will May to have $500.00 Mar. 20, 22 5 B & S 500.00 in cash 100.00 cash each 100.00 in cash put 2 tomb stones to go on my mother & father grave and my wife to have 3000.00 in cash and all personal property & my wife to hold our home place and the old hotel place that I bought from J. M. Foshee until she marry or until death. It to go to Mary and her bodily heirs."

Thigpen, Murphy & Jones, of Andalusia, for appellant.

It is not essential to the making of a valid will that the testator have a perfect memory. Councill v. Mayhew, 172 Ala. 295, 55 South. 314; Mullen v. Johnson, 157 Ala. 262, 47 South. 584; Schieffelin v. Schieffelin, 127 Ala. 14, 28 South. 687; Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33; Knox v. Knox, 95 Ala. 495, 11 South. 125, 36 Am. St. Rep. 235; Kramer v. Weinert, 81 Ala. 414, 1 South. 26. Undue influence which will avoid a will must be such as to destroy the free agency of the party. Mullen v. Johnson, 157 Ala. 276, 47 South. 584. Testimony as to contestant's contributions to the purchase of his property by the testator had no legitimate bearing on the issues in the case. For the error in overruling objections to questions eliciting such testimony, the judgment or decree should be reversed. Smith v. Smith, 174 Ala. 205, 56 South. 949, 40 L. R. A. (N. S.) 464, Ann. Cas. 1914B, 692; Barnett v. Freeman, 197 Ala. 142, 72 South. 395; Johnson v. Johnson, 206 Ala. 523, 91 South. 260.

Powell & Reid, of Andalusia, for appellee.

Trial courts are not required to instruct that there is no evidence of particular facts. Wear v. Wear, 200 Ala. 345, 76 South. 111; B. R., L. & P. Co. v. Milbrat, 201 Ala. 368, 78 South. 224; Pinckard v. Abel, 200 Ala. 64, 75 South. 392. The evidence authorized submission of issues to the jury, and the general charges were correctly refused. Batson's Case, 179 Ala. 490, 60 South. 313. In the absence of a motion to exclude evidence not responsive to a question, the court will not be put in error for permitting it to go to the jury. Ward v. Lane, 189 Ala. 340, 66 South. 499; Mobile, etc., v. Harris, 17 Ala. App. 659, 88 South. 55. Evidence showing the relations betwen the testator and his wife was admissible. Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33. The authorities cited by appellant are inapt.

THOMAS, J. The appeal is from a decree of the probate court rejecting for probate the will of J. E. J. Howell, deceased, there being a jury and verdict for contestant.

[1] The respective grounds of contest and issues tried were (1) that J. E. J. Howell "was of unsound mind and incapable of making a valid will," and (2) "that said instrument (purporting to be the last will and testament of J. E. J. Howell) is the product and result of influence exercised" by the parties specifically named, "or some one or more of them," and "was not the result of the exercise of his own free volition." A motion was made by plaintiff and proponent to set aside the verdict of the jury and to grant a new trial on specific grounds indicated therein. The motion was overruled, to which action of the court the plaintiff and proponent "then and there duly and legally excepted." The general charges requested and refused to plaintiff, the proponent, and made the ground of the motion for a new trial, will be reviewed as to the sufficiency of the evidence, though no evidence was shown by the bill of exceptions to have been specifically offered in support of the motion. The cases of Powell v. Folmar, 201 Ala. 271, 78 South. 47, and Stover v. State, 204 Ala. 311, 85 South. 393, merely recite the statute. The testimony offered on the trial was "in the breast of the court," and needed no reintroduction in support of the motion. Moneagle & Co. v. Livingston, 150 Ala. 562, 43 South. 840; Thomas Bros. v. Williams, 170 Ala. 522, 54 South. 494; National Pyrites & Copper Co. v. Williams, 206 Ala. 4, 6, 89 South. 291. The present statute providing "and the evidence taken in support of the motion * * * shall be included in the bill of exceptions * * *" did not change the former rule as to testimony taken on the original trial, and that may be considered by the court on the hearing of the motion. It was sufficient that such evidence is included in the bill of exceptions. We need hardly observe that, if other evidence was only offered on the hearing of the motion, it must be included in the bill of exceptions as "taken in support of the motion." Acts 1915, p. 722.

[2] The refused charges requested by

plaintiff and proponent were in writing, and indorsed: "Rejected. J. M. Robinson, Judge of Probate." This was a substantial compliance with the statute to make same grounds for a new trial, and to authorize a review of the action of the trial court in refusing the same. Acts 1915, p. 815.

There was preponderance of the evidence supporting the ground of contest that J. E. J. Howell was of unsound mind, and incapable of making a will at the time indicated. Taylor v. Kelly, 31 Ala. 59, 68 Am. Dec. 150; Councill v. Mayhew, 172 Ala. 295, 55 South. 314; West v. Arrington, 200 Ala. 420, 76 South. 352; Miller v. Whittington, 202 Ala. 406, 80 South. 499.

[3] As to the ground of undue influence, the question is not sufficiently raised by the "no evidence" charge No. 12, refused to plaintiff or by the motion for a new trial; and we need not consider the sufficiency of the evidence as to whether or not the testator was unduly influenced in making the will. Posey v. Donaldson, 189 Ala. 366, 368, 66 South. 662.

[4, 5] There was no error in the refusal of charges numbered 11 and 12; they are "no evidence" charges, and such as have been condemned by this court. B. R. L. & P. Co. v. Milbrat, 201 Ala. 368, 373 (13, 14), 78 South. 224; Wear v. Wear, 200 Ala. 345, 348, 76 South. 111; City of Birmingham v. Poole, 169 Ala. 177, 52 South. 937; A. G. S. R. Co. v. Yount, 165 Ala. 537, 51 South. 737; New Connellsville C. & C. Co. v. Kilgore, 162 Ala. 642, 50 South. 205; Tutwiler v. Burns, 160 Ala. 386, 49 South. 455. See Shipp v. Shelton, 193 Ala. 658, 69 South. 102. There was ample evidence of testamentary incapacity, and charges 1 and 2 were properly refused.

Questions by defendant, tending to show the relation existing between the testator and his wife, that the latter assisted the husband in making and accumulating his property were competent on the phase of contest for undue influence. Under this ground of contest, the evidence covered by the eighth, ninth, twelfth, twenty-second and twenty-fourth assignments of error was competent. Burney v. Torrey, 100 Ala. 157, 174, 14 South. 685, 46 Am. St. Rep. 33.

[6] There being other proof tending to show testator's mental incapacity, evidence that his mother became insane was relevant and admissible. Wear v. Wear, 200 Ala. 345, 76 South. 111; 22 Cyc. pp. 1117, 1118; 7 Ency. of Ev. pp. 453, 454.

[7] Witnesses Powell and Howell, having known the testator for many years prior to his death, evidence that witnesses went with him to hospital in Montgomery the day after the will was executed, observed the peculiarity about his eyes and "muscles twitching," was competent with other evidence, and long knowledge of testator, on which to base their opinion that testator was "not of sound mind," and that in the opinion of the witnesses "at that time his mind was unsound." Miller v. Whittington, 202 Ala. 406, 410 (8), 80 South. 499; Mullen v. Johnson, 157 Ala. 262, 47 South. 584.

[8] The letter to his wife, and memoranda of testator of a will before the execution of the will offered for probate, with other evidence from which the jury may infer undue influence, was competent evidence. The several writings were related to the will in question, and a tendency of evidence of testator's intent as to final disposition of his property to the beneficiaries therein and the natural objects of his bounty. Such evidence had a tendency to show that the will propounded for probate is in conflict with the fixed purpose of testator, or previously expressed purpose to dispose of his property by will. Seale v. Chambliss, 35 Ala. 19; Hughes v. Hughes, 31 Ala. 519; Schieffelin v. Schieffelin, 127 Ala. 14, 36, 28 South. 687.

[9, 10] The memorandum of date of "Mar. 20, 22," which we judicially know to mean March 20, 1922, after the will was signed, was competent evidence, under the pleadings, as shedding light on the condition of testator's mind immediately after the execution of the will propounded for probate. Bulger v. Ross, 98 Ala. 267, 12 South. 803. It is not clear from the report, of Murphree v. Senn, 107 Ala. 424, 427, 18 South. 764, that statements therein on ruling on evidence are in conflict with the foregoing. The letters were "undated and unsigned," and may have been ascribed to other agencies than that of testatrix, Savannah Shofner, which latter fact, we think, distinguished Murphree v. Senn, supra, from Bulger v. Ross, supra, and the conclusion we here announce.

The decree of the probate court is affirmed.

Affirmed.

All the Justices concur.

## On Rehearing.

[11] This court had the power ex proprio motu to put the case on rehearing that further consideration might be given to the decisions said by appellant to be applicable to the rulings on evidence, which we now specifically indicate. It may be that we should have done this in the first instance when it was thought not to be necessary.

[12, 13] The question propounded to the witness R. H. Foshee was: "Do you know anything about whether or not she assisted in any way her husband in making and accumulating his property?" After objection and exception, the witness answered: "I could not say positively, but I am of the opinion that she did." This was not responsive, being an expression of opinion of the witness. The only part of the answer that

was responsive was "I could not say positively." The opinion of the witness was not permissible or sought to be elicited. The court cannot be put in error for allowing a nonresponsive answer to go to the jury when there was no motion to exclude. Ward v. Lane, 189 Ala. 340, 66 South. 499; Mobile Light & R. Co. v. R. O. Harris Gro. Co., 17 Ala. App. 659, 661, 88 South. 55. For like reason the court will not be reviewed for permitting defendant's question to the witness Smith: "Now do you know about Mrs. Howell assisting her husband in making and accumulating his property and his estate?" to be answered: "Yes, I saw her most every day at work there, at work scrubbing and washing and cooking." Ward v. Lane, supra; Mobile Light & R. Co. v. R. O. Harris Gro. Co., supra.

[14] Counsel for contestant (appellee) was permitted to ask Mrs. Howell this question: "This property that he did leave, and that he owned at the time of his death, did you do anything towards assisting him in accumulating that property or making it? Just tell the jury what it was, Mrs. Howell?" to which the plaintiff (appellant) objected and excepted to the adverse ruling of the court. The witness answered:

"Well, I helped him in every way that I could; if there was anything that I could do in doing my own work and in helping him I did it. I taken in sewing part of the time, and I got up, when he got to running his taxi, I got up all hours of the night to get him his supper when he came in at night, and I would get up before day every day to get him his breakfast before he left, and I helped him in every was [way] to make and save what we have. I have done my washing and ironing and scouring to help him to make what we had."

This answer of the wife, made the basis of appropriate assignment of error and arguments of counsel, is the story of normal domestic life, in a household where harmony prevails, frugality is practiced, and there is mutual help between husband and wife, according to their circumstances. We may be pardoned in the observation that in this answer we are reminded of the "virtuous woman" (wife) of whom it is said of old:

"She seeketh wool, and flax, and worketh willingly with her hands." "She riseth also while it is yet night, and giveth meat to her household." "She is not afraid of the snow, * * * for all of her household are clothed. * * *" Proverbs 31: 13, 15, 21.

That answer is declaratory of the state of feeling between the parties within a reasonable time before and to that when the will was made; and it had not the effect of asserting or declaring an equitable title to any of the household properties, nor of tracing the source of title to any of her husband's properties. It was this we sought to declare in our short statement (in the original opinion) that—

"Questions by defendant tending to show the relation existing between the testator and his wife * * * were competent"—citing Burney v. Torrey, 100 Ala. 157, 168, 173, 174, 14 South. 685, 46 Am. St. Rep. 33.

In that case the will was contested on the ground of "fraud and undue influence" in procuring a bequest or devise. The court said it was competent to show the relations between the parties, and makes the distinction between evidence tending to prove title in property and that merely showing the relations of the parties. Mr. Justice Coleman said:

"It was not competent to *prove property* in Mrs. Torrey by a declaration of Mr. Torrey to the effect that it was his custom when he purchased property to take title of alternate purchases in her name. It was competent to prove by legal evidence that he had provided for her, and the extent of the provision. It was also competent to prove that *she assisted him to make the property*, and his declarations to this effect." (Italics supplied.)

The relations of the parties, on the issue of undue influence, have ever been held a material inquiry. Wear v. Wear, 200 Ala. 345, 348, 76 South. 111; Hughes v. Hughes, 31 Ala. 519; Couch v. Couch, 7 Ala. 519, 42 Am. Dec. 602; Seale v. Chambliss, 35 Ala. 19, 22; Gilbert v. Gilbert, 22 Ala. 529, 58 Am. Dec. 268; Dawley v. Congdon, 42 R. I. 64, 105 Atl. 393, 395, 396; 40 Cyc. p. 1286. Analogy is contained in Griffin v. Working Women's Ass'n, 151 Ala. 597, 605, 44 South. 605, 607, where the ground of contest was fraud; "the friendly relations that existed between the deceased and the proponent, who was his stepdaughter" were held to be "circumstances proper for consideration by the jury in determining the question" litigated.

The foregoing authorities are supported by Mr. Schouler, in the fifth edition of his work on Wills, etc., vol. 1, pp. 291, 292, § 242. It is there said:

"So, too, is it admissible to prove that former wills or former testamentary plans embodied a different purpose, as tending to show whether or not the testator has understandingly and of his own free will changed his settled plans in favor of the present arrangement; while the justice or injustice of that arrangement, the natural or unnatural character of the will offered for probate, may open a wide inquiry into family circumstances; for evidence tending to show the relation of a testator to the natural objects of his bounty, the feelings he entertained towards them, and their pecuniary condition, bears upon the issue of undue influence as well as of capacity. Beaubien v. Cicotte, 12 Mich. 459; Staser v. Hogan, 120 Ind. 207, 21 N. E. 911, 22 N. E. 990; Melanefy v. Morrison, 152 Mass. 473, 26 N. E. 36; Crocker v. Chase, 57 Vt. 413; In re Davis' Will, 73 N. J. Eq. 617, 68 Atl. 756. Evidence showing through what line of relatives, or from what sources, the fortune bequeathed was derived, or favors received, may have a bearing upon

the natural or unnatural character of the disposition. Glover v. Hayden, 4 Cush. (Mass.) 580; Patterson v. Patterson, 6 Serg. & R. (Pa.) 55; Oxford v. Oxford, 71 S. E. 883, 136 Ga. 589; Smith v. Keller, 98 N. E. 214, 205 N. Y. 39; Dudderar v. Dudderar, 82 Atl. 453, 116 Md. 605 (draft of a former unexecuted will)."

The case of Smith v. Smith, 174 Ala. 205, 56 South. 949, is relied upon by appellant. There the testatrix was the mother of contestants, living with some of her children, and estranged as to other children. Evidence was admitted that at a previous time contestants contributed through their labor to the purchase of the lands of testatrix owned by her at the time of her death. This was held to be error on authority of Winston v. Elliott, 109 Ala. 416, 419, 53 South. 750. In the latter case the holding was that the equitable title to lands of which testator died seized and possessed might not be shown to be in contestants by reason of their contributions to the purchase, nor might the source from which testator obtained the money to buy same be shown. The court said:

"Whether the equitable title belonged to the testator, or to the heirs of his deceased wife, was a question that the probate court properly declined to try, on the contest of the probate of the will. It appears that this very question was pending in another court for trial.

"The court admitted evidence as to the declarations of the testator, made shortly before the execution of the will, that a part of the property disposed of was purchased with money belonging to his first wife, and who was deceased, and who was the mother of contestants, and other declarations that the property belonged to his children, the contestants. The court properly declined to admit declarations of the testator, made long before the execution of the will, and before he had any thought of disposing of the property by will, as to where he obtained the money with which he purchased the property, and as to whether or not he acquired it from his first wife."

The principle decided was that the equitable interest of contestants in the lands of testator may not be shown. No such inquiry was instituted by the answer of Mrs. Howell, who merely answered as a good housewife similarly situated should be able to answer. Its only tendency was to show the true relation of the parties. It tended to show the mutually dependent relation of husband and wife, as the latter faithfully did her part in relation to the former, under the circumstances as from time to time were presented, in the course of conduct of their domestic affairs and relations, and in their mutual self-help in discharging the duties of life, and in the accumulation for the exigencies of old age.

In Barnett v. Freeman, 197 Ala. 142, 145, 72 South. 395, 396, it is merely said:

"The fact of how the testatrix acquired her property or how much she may or may not

have contributed to the purchase of same by her deceased husband, or the reasons or motives that led her to make the will of 1910, as it was not being contested, had no legitimate bearing upon her mental status when executing the will under contest, which was made five years thereafter."

The facts recounted in the Barnett-Freeman Case, supra, had no tendency to show the relations of the parties litigant at the time of the execution of the later will of 1915, which was being contested on grounds of undue influence. And Johnson v. Johnson, 206 Ala. 523, 91 South. 260, contains merely the statement that there was "no error in denying contestants' effort to trace the source *or sources of the estate left by the testator.*" (Italics supplied.)

A natural and reasonable construction of this evidence, or reasonable inferences to be drawn therefrom, was merely that the wife was dutiful, industrious, and frugal. Her answer to the question was a story of the domestic harmony that no doubt prevailed in that family, and of the discharge of the respective duties of husband and wife. The evidence in question had not the effect of showing that the wife participated in the purchase or acquisition of specific properties of the husband, nor to point to the source of title to the properties sought to be devised and bequeathed. It was merely a picture of the domestic relations that existed between the testator and his wife. The relations of the parties before and at the time of the making of the will were material. This answer of Mrs. Howell was her shorthand rendition of her discharge of her duties to him, and to the full extent of their domestic affairs and the necessities thereof, in their mutual efforts for existence and the acquisition of property to meet the coming winter of old age; and it tended to show the duty of the husband and his natural inclination to discharge his obligation in making his last provisions for the wife.

In the case of Smith v. Smith, supra, the objectionable evidence for contestants was that "their labor" contributed "to the purchase of the land owned by the mother at the time of her death and at the date of the execution of the instrument" propounded for probate. In the instant case, to use the language of the witness, it was merely that the witness Foshee "could not say positively," but "was of the opinion" that the wife assisted the husband "in making and accumulating his property" that was not responsive to the question propounded; and that the witness Smith saw Mrs. Howell "most every day at work * * * scrubbing, washing, and cooking," and which was likewise not responsive to the question. Mrs. Howell's statement was merely that of the good wife, helping the husband in "every way" she could; taking in sewing a

part of the time; washing, ironing and scouring; cooking for him early and late; helping him "in every way," and all the while saving "what we have * * * to help him make what we had." Such were the declarations of the harmonious relations of the husband and wife (within the rule of Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33), rather than the objectionable inquiry of the source of title condemned in the foregoing authorities. The rule of these cases should not be further extended and applied to a reversal of this case.

The application is overruled.

All the Justices concur.